[Sac. No. 7497.   In Bank.   Dec. 12, 1963.]

CALIFORNIA WATER RESOURCES DEVELOPMENT FINANCE COMMITTEE, Petitioner v. BERT A. BETTS, as State Treasurer, Respondent.

Stanley Mosk, Attorney General, E. G. Funke, Assistant Attorney General, V. Barlow Goff, Philip K. Jensen, and Milos Terzich, Deputy Attorneys General, for Petitioner.

Bradford, Cross, Dahl & Hefner and Archie Hefner for Respondent.

Charles C. Cooper, Jr., John H. Lauten, Donald J. Whitlock, O'Melveny & Myers, James L. Beebe, Pierce Works, James W. Beebe, and Howard J. Deards as Amici Curiae.

GIBSON, C. J.—This case concerns the validity of waiver provisions contained in bonds proposed to be issued under the authority of the California Water Resources Development Bond Act (Wat. Code, § 12930 et seq.), hereafter called the Burns-Porter Act, and involves in part the matter decided in *Warne* v. *Harkness, ante,* p. 579 [35 Cal.Rptr. 601, 387 P.2d 377], namely, the relationship between the Burns-Porter Act and financing provisions of the Central Valley Project Act (Wat. Code, § 11100 et seq.) The California Water Resources Development Finance Committee[1] seeks a writ of mandate to compel the State Treasurer to publish a notice of sale of Burns-Porter Act bonds in the principal amount of $100,000,000 and to prepare and sell the bonds in accordance with the provisions of certain resolutions of the committee. Respondent, although admitting that it is his duty as Treasurer to cause valid bonds to be prepared and sold as directed by the committee, has refused to act in this instance upon the ground that the inclusion of the waiver provisions in the notice and in the bonds is contrary to the authority of the committee under the Burns-Porter Act.

The resolutions adopted by the committee prescribe the form and language of bonds to be issued under the Burns-Porter Act, provide for the form of notice of sale, and set forth the determination of the committee that the issuance of bonds in the aggregate principal amount of $100,000,000 is necessary at this time. (Resolutions I and II, adopted May 21, 1963; Resolution IV, adopted July 12, 1963.) Each bond is to contain the following waiver provision (which is also to appear in a shorter form in the notice of sale): "The holder of this bond, by his acceptance hereof, consents and agrees

---

[1]The committee is composed of the Governor, the State Treasurer, the State Controller, the Director of Finance and the Director of Water Resources. (Wat. Code, § 12933.)

that such income and revenues remaining after the annual payment of the principal of and interest on the bonds issued under the Act may be pledged and allocated to the annual payment of the principal of and interest on general obligation bonds hereafter authorized and issued by the State, the proceeds of which are required by law to be deposited in the California Water Resources Development Bond Fund created by the Act, without preference, priority or distinction of any one such bond over any other by reason of prior authorizations, issuance, or sale, and further consents and agrees that any income and revenues derived from the operation of power facilities, for the construction of which revenue bonds under the Water Code governing the Central Valley Project are issued, may be pledged and allocated to the annual payment of the principal of and interest on such revenue bonds and to the payment of expenses and to the creation of such reserve or other funds as may be established for the better securing of such revenue bonds, and further waives the provisions of any law inconsistent with the foregoing consents and agreements herein set forth.''

The quoted language thus provides for the use of certain parts of the revenues for two purposes other than the payment of Burns-Porter bonds: (1) to secure and pay general obligation water bonds which may be authorized by future legislation and (2) to secure and pay revenue bonds issued under the Central Valley Project Act. Respondent points out that the Burns-Porter Act provides that bonds may be issued by the committee ''in the manner and to the extent herein provided, but not otherwise ...'' (Wat. Code, § 12935), and his principal contention is that both portions of the waiver are illegal and void because, he asserts, the pledge and priority provisions of the act (Wat. Code, § 12937, subd. (b)) preclude use of any revenues from the State Water Resources Development System for the securing or repayment of any bonds other than Burns-Porter bonds. He argues that the pledge and priority provisions were intended for the benefit of the voters and the public as well as for the protection of bondholders and that for this reason a waiver by bondholders would be ineffective under section 3513 of the Civil Code, which provides: ''Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.''

It should be emphasized at the outset that the portion of the waiver relating to future general obligation bonds is limited in scope. Under its terms the Burns-Porter bonds have priority over future bonds with respect to the revenues from the system; only excess revenues, i.e., revenues "remaining after" the annual servicing of Burns-Porter bonds, may be used for future bonds. Moreover, the waiver is limited to future bonds issued to supplement the water bond fund created by the Burns-Porter Act, and that fund may be used only for facilities of the State Water Resources Development System. (Wat. Code, § 12935.)

In the absence of a waiver the security rights of Burns-Porter bondholders in relation to future general obligation bonds would be governed by the pledge and priority provisions of the Burns-Porter Act set forth in section 12937, subdivision (b), of the Water Code, which provides in part that all revenues from the system shall be "used annually only for the following purposes and in the following order, to wit: 1. The payment of the reasonable costs of the annual maintenance and operation of the State Water Resources Development System and the replacement of any parts thereof. 2. The annual payment of the principal of and interest on the bonds issued pursuant to this chapter. 3. Transfer to the California Water Fund as reimbursement for funds utilized from said fund for construction of the State Water Resources Development System. 4. Any surplus revenues ... shall, during the time any of the bonds authorized herein are outstanding, be deposited in a special account in the California Water Resources Development Bond Fund and are hereby appropriated for use and shall be available for expenditure by the department for acquisition and construction of the State Water Resources Development System as described in Section 12931 hereof. All such revenues shall constitute a trust fund and are hereby pledged for the uses and purposes above set forth and such pledge shall inure to the direct benefit of the owners and holders of all general obligation bonds issued under this chapter. . . ."

The portion of the waiver relating to future general obligation bonds does not call upon the Burns-Porter bondholders to relinquish the security rights they have under the statute. The waiver in no way affects the security rights of the bondholders to have the revenues used for maintenance of the system in accordance with the priority specified in subpara-

graph (1) of the statutory provision or for the servicing of the bonds in accordance with the priority set forth by subparagraph (2). The bondholders consent at most to a deviation from the use of the revenues as provided for in subparagraphs (3) and (4), and as discussed below such consent by the bondholders is not improper.

The reimbursement of the California Water Fund as provided in subparagraph (3) is not for the benefit of the bondholders but is in the interest of the public. The bondholders have no right in the matter which they can waive, and, so far as concerns the public interest, any issuance of future general obligation bonds having a priority over reimbursement of the California Water Fund will be possible only if such a change is authorized by a new bond act meeting all legal requirements.

The purpose of subparagraph (4) is to permit use of surplus revenues for construction of facilities of the system, and this purpose can be accomplished not only by the use of surplus revenues directly for payment of such construction but also indirectly, as contemplated in the waiver, by the issuance of future general obligation bonds supported by the surplus revenues. The use of the excess revenues for such financing would thus be proper even without a waiver. The waiver nevertheless will serve a useful purpose in that it will protect against the possibility of litigation by a Burns-Porter bondholder to urge a construction of subparagraph (4) contrary to the one we have now given.

It follows from what we have said that the inclusion in the Burns-Porter bonds of the waiver insofar as it relates to future general obligation bonds is unobjectionable.

With respect to the waiver provision relating to Central Valley Project bonds, it must be pointed out that in *Warne* v. *Harkness, ante,* p. 579 [35 Cal.Rptr. 601, 387 P.2d 377], we have concluded that the pledge and priority provisions of the Burns-Porter Act do not repeal the provisions of the Central Valley Project Act concerning the issuance of revenue bonds and have no application to the revenues from power facilities financed with Central Valley Project bonds. The holders of Burns-Porter bonds therefore have no security rights in such revenues, and, although the provision in the bonds relating to those revenues is in the form of a waiver, the bondholders do not actually give up any security to which they are entitled. It may be noted that the language of

the provision is unfortunate because the revenues from power facilities financed with Central Valley Project bonds are waived only to the extent that they are pledged for servicing those bonds and meeting expenses; no reference is made to surplus revenues from facilities thus financed. In the absence of judicial construction of the applicable statutes, the language might have led to the erroneous understanding that Burns-Porter bondholders would have security rights in the surplus revenues from facilities financed with Central Valley Project bonds, but the situation is now fully clarified by our decisions here and in *Warne*.

Let a peremptory writ of mandate issue.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.